**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Howard R. Tallman**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MIGUEL ANGEL HERNANDEZ,** | ) | **Case No. 13-12479 HRT** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **PAUL ADAMS and** | ) | **Adversary No. 13-1272 HRT** |
| **MONA ADAMS,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MIGUEL ANGEL HERNANDEZ, d/b/a** | ) | |
| **The Outdoor Room,** | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON COMPLAINT TO**
**DETERMINE DISCHARGEABILITY OF DEBT**

This case comes before the Court on Plaintiffs' *Complaint to Determine Dischargeability of Debt* (docket #2) (the "Complaint"). On January 30, 2014, the Court entered its *Order for Sanctions Including Judgment by Default* (docket #24) (the "Sanction Order"). Thereafter, on March 11, 2014, the Court held a default hearing and took evidence from the Plaintiffs with respect to damages.

In the Court's Sanction Order, it struck the Defendant's Answer and entered default against the Defendant as a sanction for the Defendant's disobedience to the Court's *Order Compelling Disclosure and Discovery* (docket #21) (the "Discovery Order"). The consequence of that default is that the Defendant is deemed to have admitted all of the factual allegations appearing in the Plaintiffs' Complaint.

I.  FACTUAL BACKGROUND

At the time he entered into a contract with the Plaintiffs, the Defendant was doing business as The Outdoor Room. He entered into a contract with the Plaintiffs to demolish an existing rear deck and construct a new deck and entertainment area. The contract price for the work was $100,000.00 and, under the terms of the contract, the Plaintiffs paid the Defendant $60,000.00. They paid $10,000.00 when the contract was executed; $30,000.00 following

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

demolition to enable the Defendant to purchase materials; and two subsequent progress payments of $10,000.00 each.

The Defendant completed some demolition work, delivered some materials and, thereafter, abandoned the project. The contract was later officially terminated by the Plaintiffs. The Plaintiffs value the amount of work completed by the Defendant as being worth $20,000.00.

## II.  DISCUSSION

The Plaintiffs seek a judgment against the Defendant for damages under the breached contract; for violation of the Colorado Mechanics Lien Trust Fund Statute, COLO. REV. STAT. § 38-22-127; and for civil theft under COLO. REV. STAT. §§ 18-4-401 & 18-4-405. They ask the Court to declare such judgment to be exempt from the Defendant's bankruptcy discharge under 11 U.S.C. § 523(a)(2) and / 11 U.S.C. § 523(a)(4).

Exceptions to dischargeability of debt in bankruptcy are to be strictly construed in favor of the debtor and against the creditor. *See, e.g., Gleason v. Thaw*, 236 U.S. 558, 561-62 (1915); *In re Kaspar*, 125 F.3d 1358, 1361 (10th Cir. 1997) ("We start our analysis with recognition of the rule that exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor.").

A.  Effect of Default

Shortly after this case was initiated by the Plaintiffs, Defendant engaged counsel to represent him in this matter and counsel filed an answer on Defendant's behalf. Counsel participated in formulating a proposed discovery and scheduling order and attended the scheduling conference. Approximately two months thereafter, counsel moved to withdraw from his representation in this case and, without objection, the Court allowed counsel's withdrawal.

Following his counsel's withdrawal, Defendant ceased to actively participate in the process of completing discovery and getting this case postured for trial. Plaintiffs were forced to seek a Court order compelling the Defendant to respond to discovery. After the Defendant failed to comply with the Court's Discovery Order, Plaintiffs sought an order declaring the Defendant's default as a discovery sanction. The Court entered its Sanction Order and conducted the default hearing.

Notwithstanding the Defendant's default and the evidence that the Court heard from the Plaintiffs, the Court has an independent duty to insure that a basis exists for the judgment that the Plaintiffs seek. Before granting judgment after a party's default, the Court must examine the legal basis for the relief requested. In *Nishimatsu Const. Co. Ltd. v. Houston National Bank*, 515 F.2d 1200 (5th Cir.1975), the Fifth Circuit explained that a party's default

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

> does not in itself warrant the court in entering a default judgment.  There must be
> a sufficient basis in the pleadings for the judgment entered.  . . .  [A] default is not
> treated as an absolute confession by the defendant of his liability and of the
> plaintiff's right to recover.

*Id*. at 1206 (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)).  In the case of *Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353 (S.D. Ga. 2004), the court explained that "[w]hile the well-pleaded *facts* alleged in the Complaint are deemed admitted, plaintiff's *conclusions* of law are not, and the Court may grant only the relief for which a sufficient basis is asserted . . . ." *Id*. at 1356 (emphasis in original).

The Court must, at minimum, satisfy itself that the allegations that are deemed admitted, as a result of the Defendant's default, and the evidence presented by the Plaintiffs form a basis for a judgment of nondischargeability under § 523(a).  The Plaintiffs' Complaint references both 11 U.S.C. §§ 523(a)(2) & (a)(4).

B.  11 U.S.C. § 523(a)(2) – Fraud

Under § 523(a)(2), "[a] discharge under section 727 . . . of [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."  11 U.S.C. § 523(a)(2)(A).

The elements that Plaintiffs need to prove to support their cause of action under § 523(a)(2)(A) are:

> (1) the debtor made a false representation; (2) the debtor made the representation
> with the intent to deceive the creditor; (3) the creditor relied on that
> representation; (4) the creditor's reliance was [justifiable];[1] (5) the debtor's
> representation caused the creditor to sustain a loss.

*Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

---

[1] The *Fowler Bros.* court used the term "reasonable" reliance but, in the case of *Field v. Mans*, the Supreme Court held that § 523(a)(2)(A) requires justifiable, and not reasonable, reliance.  516 U.S. 59, 74 (1995).  The Court must apply that standard rather than the reasonable reliance standard articulated in *Fowler Bros.*

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

Neither the Complaint nor the evidence the Court heard support a finding of fraud.  There is no allegation that the Defendant entered into the contract with the intention of taking the Plaintiffs' money and not performing.  Moreover, both the Complaint and Mr. Adams' testimony confirm that the Defendant partially performed his obligations under the contract.  That is inconsistent with a finding that, at the time the contract was entered into, the Defendant lacked the present intention to perform under the contract.

C.  11 U.S.C. § 523(a)(4) – Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny

Under  11 U.S.C. § 523(a)(4),

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

11 U.S.C. § 523(a)(4).

1. *Fiduciary Capacity*

A cause of action for fraud or defalcation while acting in a fiduciary capacity first requires the establishment of fiduciary duties running from the Defendant to the Plaintiffs.

The question of whether or not there is a § 523(a)(4) fiduciary relationship is a matter of federal law.  *Fowler Brothers*, 91 F3d at 1371.  "Neither a general fiduciary duty of confidence, trust, loyalty, and good faith . . . nor an inequality between the parties' knowledge or bargaining power . . . is sufficient to establish a fiduciary relationship for purposes of dischargeability." *Id.* at 1372.  *See also, Upshur v. Brisco*, 138 U.S. 365, 375 (1891) ("Within the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a 'fiduciary character,' merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms.").  "[A]n express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)." *Fowler Brothers*, 91 F.3d at 1371 (citations omitted).

Express trusts are those trust relationships which are intentionally entered into by the parties.  An express trust may involve a formal declaration of trust or a situation where the intention of the parties to form a trust relationship may be inferred by the surrounding facts and circumstances.  *In re Turner*, 134 B.R. 646, 649 (Bankr. N.D. Okla. 1991).

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

The Plaintiffs' Complaint in this matter contains no allegation of the existence of an express trust nor does it contain allegations from which the Court can fairly infer the existence of an express trust. Any trust relationship in this case would have to be a technical trust. A technical trust is distinguished from an express trust in that the intention of the parties is not relevant. In a technical trust, the trust obligations are imposed on the parties. *Id*.

### 2. *Colorado's Mechanics Lien Trust Fund Statute*

The issue of a technical trust often arises in construction cases based on fiduciary duties imposed on contractors by Colorado's Mechanics Lien Trust Fund Statute, COLO. REV. STAT. § 38-22-127 (the "TFS"). *See, e.g., In re Regan*, 311 B.R. 271, 275 (Bankr. D. Colo. 2004) ("Colorado courts have held that the TFS is unambiguous in its creation of a . . . statutory fiduciary relationship."). A property owner has an interest protected by the TFS. *See In re Regan*, 151 P.3d 1281, 1286 (Colo. 2007) ("property owners *are* direct beneficiaries of the Trust Fund Statute") (emphasis in original). A property owner may file suit to enforce a contractor's obligations under the TFS. *Syfrett v. Pullen*, 209 P.3d 1167, 1171 (Colo. Ct. App. 2008) ("we conclude that the property owner of a construction project, as well as the subcontractors, material suppliers, and laborers, has a legally protected interest to enforce the trust created by the Trust Fund Statute upon funds disbursed by the owner to a general contractor."). *See also In re Walker*, 325 B.R. 598, 604 (D. Colo. 2005); *In re Specialized Installers, Inc.*, 12 B.R. 546, 551 (Bankr. Colo. 1981).

Plaintiffs may enforce the provisions of the TFS against the Defendant. In relevant part, the TFS reads as follows:

> All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

COLO. REV. STAT. § 38-22-127(1).

The TFS defines the purposes of the trust as being "for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property . . . ." *Id*. To the extent that the Defendant has failed to pay "subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor," *Id*., the Court will find that he has breached the fiduciary duties imposed on him by the TFS.

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

In the Complaint, there is a single reference to a potential basis for finding a breach of the TFS. In ¶13 of the Complaint, the Plaintiffs allege that

On or about December 5, 2012, Plaintiff received notification that one Ronald Mardoqueo Umanzor Sandoval, a subcontractor of Defendant's on the subject project, had not been paid for his work by Defendant. A copy of said Notification is attached hereto as Exhibit B.

No Exhibit B was attached to the Complaint when it was filed but, at the damages hearing, the Court admitted Plaintiffs' Exhibit #9, a demand letter from Plaintiffs' counsel to the Defendant. The notice from Mr. Sandoval is attached as an exhibit to that letter and it states that Mr. Sandoval is owed $3,500.00. This exhibit in combination with the allegation in the Complaint that is deemed admitted due to Defendant's default, establishes the Defendant's defalcation to the extent of $3,500.00. The Court has before it no other allegation or evidence that can fairly be construed to constitute defalcation of the trust imposed by the TFS.

*3. Civil Theft*

The Plaintiffs paid the Defendant $60,000.00. Of that amount, one payment of $30,000.00 was paid to the Defendant in cash on July 16, 2012. That particular payment was made for the purpose of purchasing materials. The evidence is that materials were delivered to the job site and the Court has no evidence of any unpaid bills for materials. The Court has no evidence of the extent of subcontract labor the Defendant may have used on the job. The only allegation or evidence the Court has of any breach of trust is the $3,500.00 that remained unpaid to Mr. Sandoval.

The TFS provides that "[a]ny person who violates the provisions of subsections (1) and (2) of this section commits theft, as defined in section 18-4-401, C.R.S." COLO. REV. STAT. § 38-22-127(5). But liability for civil theft is not automatic upon a finding that a contractor has violated the TFS. The Court must still independently find that the elements of theft under COLO. REV. STAT. § 18-4-401 have been satisfied. *See, e.g., In re Dorland*, 374 B.R. 765, 779-80 (Bankr. D. Colo. 2007).

Theft, under Colorado law, is defined as follows:

A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

(a)     Intends to deprive the other person permanently of the use or benefit of the thing of value;

(b)     Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;

(c)     Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit;

(d)     Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to the other person; or

(e)     Knowingly retains the thing of value more than seventy-two hours after the agreed-upon time of return in any lease or hire agreement.

COLO. REV. STAT. § 18-4-401.

Two elements are required to constitute theft under Colorado law.  The first element goes to *conduct* – exercising control over property of another without authorization.  The second element goes to the *result* of the conduct – permanently depriving the owner of the use or benefit of the property.  The statute prescribes a state of mind for each of the elements.  The actor must *knowingly* exercise control over the property to satisfy the first element.  To satisfy the second element, at minimum, the actor must *knowingly* act in such a way as to deprive the owner of the use of benefit of the property.[2]

Under the Colorado Criminal Code, an individual acts *knowingly* with respect to the conduct that constitutes theft "when he is aware" he is exercising control over property of another without authorization.  *See* COLO. REV. STAT. § 18-1-501(6).  *See also People v. Andrews*, 632 P.2d 1012, 1015 (Colo. 1981) (" An awareness that one is obtaining or exercising unauthorized control over another's property marks the dividing line between criminal knowledge . . . on the one hand, and innocent conduct on the other.").  He acts *knowingly* with respect to the result of his conduct "when he is aware that his conduct is practically certain to cause the result" of depriving "the other person permanently of [the property's] use or benefit." *People v. Anderson*, 773 P.2d 542, 545 (Colo. 1989).

Liability for civil theft is established by the Defendant's default.  Plaintiffs' Complaint includes an allegation of liability for civil theft based on the Defendant's violation of the TFS.  That allegation incorporates the elements of theft under COLO. REV. STAT. § 18-4-401 as

---

[2] Section 18-4-401(1)(a) thru (e) describe multiple ways in which the second element of the crime may be satisfied.  Subsections (a) and (c)  require *intentional* conduct; subsections (b) and (e) require *knowing* conduct.  Subsection (d) appears not to require proof of a state of mind to satisfy the second element of the crime under those particular circumstances.

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

referenced in the TFS.  Because the record before the Court does not support a finding that the Defendant violated the TFS to any extent beyond the one $3,500.00 unpaid bill from a subcontractor, it is only that $3,500.00 amount that is subject to treble damages under Colorado's civil theft statute.  COLO. REV. STAT. § 18-5-405.

### 4. Costs and Attorney Fees

Under Colorado's civil theft statute, in addition to recovery of treble damages, a plaintiff "may also recover costs of the action and reasonable attorney fees."  COLO. REV. STAT. § 18-4-405.

### a. Costs

In their *Affidavit of Attorney Fees and Costs* (docket #26) ("Affidavit"), Plaintiffs claim $616.54 as costs.  The court will allow costs in the amount of $293.00 for the filing fee incurred in this matter as well as the fee for service of process in the amount of $51.00.  The costs of electronic filing of pleadings is not an allowable cost under 28 U.S.C. § 1920 and those charges are disallowed.  Also, certain charges enumerated on the statements attached to Plaintiffs' Affidavit occurred prior to the filing of this case and are, therefore, disallowed.

### b. Attorney Fees

Plaintiffs' Affidavit requests an award of attorney fees in the amount of $10,170.50.  Because the Plaintiffs have demonstrated that the Defendant committed civil theft, they are entitled to recover "reasonable attorney fees."  COLO. REV. STAT. § 18-4-405.  The case of *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) sets out a number of factors for courts to consider in a determination of that reasonableness of an attorney fee award.  The Tenth Circuit Court of Appeals has said that "[t]his court has long applied the *Johnson* lodestar factors to assess "reasonableness" of attorney's fees in a variety of contexts . . . ."  *In re Miniscribe Corp.*, 309 F.3d 1234, 1243-44 (10th Cir. 2002).  *See also In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246-47 (10th Cir. 2013).  The *Johnson* factors are; 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent: 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases.  *Johnson*, 488 F.2d 717-19.

The Court finds the hourly rate charged by the Plaintiffs' counsel to be reasonable and within the customary range of hourly rates for cases of this type.  The Court has reviewed

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

counsel's affidavit and, for the purpose of determining reasonable attorney fees for this matter, has removed the hours claimed that applied to work done prior to the filing of the bankruptcy case. It is apparent, from the Court's review, that counsel corresponded with the Defendant and filed a state court action prior to the Defendant's filing of his bankruptcy case. In addition, the Court has removed hours dedicated to counsel's drafting of a proposed order because the Court found the proposed order was not helpful to the Court. Of the total 31.3 hours claimed by counsel, the Court finds that 19.75 of those hours are reasonably applicable to proceedings in this Court. Thus, the Court begins with the figure of $6,418.75 which represents the allowable 19.75 hours spent by counsel multiplied by his hourly rate of $325.00.

The Court has considered whether the factor of "the amount involved in the litigation and results obtained," *id.* (factor #8), requires an adjustment. Limiting the fee award to just those fees incurred in this proceeding has had the effect of imposing a significant reduction upon counsel's request. Still, the expenditure of nearly 20 hours to demonstrate damages of $3,500.00 ($10,500 after trebling) results in a fee that is high in relation to the amount reasonably at issue under a nondischargeability theory and the results obtained. However, total hours were driven up by the Defendant's refusal to participate in discovery and additional time and effort to seek the order to compel and ultimately to seek and obtain the sanctions order. Therefore, no further reduction is appropriate.

The Court will allow costs in the amount of $344.00 and attorney fees of $6,418.75.

D. Plaintiffs' Proposed Order

At the Court's request, following the default hearing, Plaintiffs' counsel submitted a proposed order. The proposed order reflected recovery of damages far beyond what is authorized under 11 U.S.C. § 523. Some damages reflected in the Plaintiffs' proposed order – delay penalties; cost of completion; etc. – arise solely under the Plaintiffs' contract with the Defendant. But damages that might be available to a plaintiff on a breach of contract claim outside of bankruptcy court are dischargeable in bankruptcy.

The Plaintiffs' proposed order also reflects a theory of recovery not present in their Complaint. It seeks trebled civil theft damages on a base amount of $40,000.00. That figure is derived by subtracting the Plaintiffs' $20,000.00 estimate for the value of the Defendant's work from the $60,000.00 that the Plaintiffs paid him. Plaintiffs characterize that theory of recovery in terms of the Defendant wrongfully withholding the unused portion of their deposit and seek trebling under Colorado's civil theft statute. But, the Court's declaration of default as a discovery sanction is limited to the theories of recovery fairly discernable in the Complaint itself.

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

FED. R. CIV. P. 54(c)[3] ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Plaintiffs' Complaint seeks civil theft damages in connection with the breach of fiduciary duty claim under 11 U.S.C. § 523(a)(4) based upon a violation of the TFS. The allegations in the Complaint did not put the Defendant on notice that Plaintiffs sought civil theft damages based on money paid to him under the parties' contract except to the extent that he violated the statutory trust imposed by the TFS.

In any case, proof of civil theft does not state an independent ground for recovery of a nondischargeable debt under the Bankruptcy Code. Stated in terms of 11 U.S.C. § 523, the Plaintiffs appear to be seeking an award of damages for embezzlement or larceny under § 523(a)(4). But once the Plaintiffs satisfied their obligation to make payment to the Defendant under the parties' contract, they no longer had an ownership interest in those funds. *See, e.g. In re Mathis*, 360 B.R. 662, 668 (Bankr. C.D. Ill. 2006) ("[The contractor] had a right to payment under the contract once certain stages of the project were reached. The Plaintiffs did not retain a property interest in the money [the contractor] received from them."); *In re Bren*, 284 B.R. 681, 698 (Bankr. D. Minn. 2002) ("Payment of a contract price in exchange for the recipient to undertake an obligation of future performance transfers the ownership of the money to the recipient."). As soon as the funds were paid to the Defendant, they became his funds. He was subject to certain obligations under the TFS and he was under contractual obligations to the Plaintiffs but, after payment, the funds belonged to the Defendant and "[o]ne cannot embezzle one's own property." *In re Bren*, 284 B.R. at 698.

E.  Constructive Trust

The TFS provides that funds received by a contractor are to be held in trust for "*subcontractors, laborer or material suppliers, or laborers* who have furnished laborers, materials, services, or labor . . . ." COLO. REV. STAT. § 38-22-127(1) (emphasis added).

Federal cases in Colorado – typically in the bankruptcy context – have found that, although not named in the statute, a property owner has standing to file suit against a contractor for violation of the TFS. *See, e.g., In re Walker*, 325 B.R. 598, 604 (D. Colo. 2005); *In re Specialized Installers, Inc.*, 12 B.R. 546, 551 (Bankr. Colo. 1981). The Colorado Court of Appeals case of *Syfrett v. Pullen*, 209 P.3d 1167 (Colo. Ct. App. 2008), *cert. denied*, 2009 WL 1587905 (Colo. June 8, 2009), has also concluded that "the property owner of a construction project, as well as the subcontractors, material suppliers, and laborers, has a legally protected interest to enforce the trust created by the Trust Fund Statute upon funds disbursed by the owner to a general contractor." *Id.* at 1171.

_____

[3] Made applicable to this proceeding by FED. R. BANKR. P. 7054.

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

In *Syfrett*, the Colorado Court of Appeals rejected the contractor's argument that the property owner lacked standing to sue under the TFS. *Id.* Nonetheless, the court remanded the case back to the trial court to modify the form of judgment entered below. The court required the trial court to impose a constructive trust upon the property owner's judgment such that any funds that may be collected by the property owner would be held in trust for payment of the statute's named beneficiaries – subcontractors, laborer or material suppliers, or laborers. Further, the *Syfrett* court held that it was the

> subcontractors, laborers, and material suppliers who have been deprived of the funds. Therefore, in order for [the property owner] to recover trebled damages in accordance with the theft statutes, the trebled amounts awarded against [the contractor] must also be held in constructive trust for the benefit of unpaid subcontractors, laborers, and material suppliers.

*Id.* at 1172.

Consequently, under Colorado law, the Court must impose a constructive trust upon the trebled damages in this matter in favor of the one unpaid subcontractor, Mr. Sandoval. *See In re Gill*, 2011 WL 3236173, *7 (Bankr. D. Colo. July 28, 2011) (unpublished opinion).

F.  Defendant's Motion to Reconsider

On January 30, 2014, the Court entered its Sanction Order that struck the Defendant's Answer and entered a default on the Plaintiff's Complaint as a sanction for the Defendant's disobedience to the Court's Discovery Order. The Court set February 25, 2014, as the date for the default damages hearing in this matter.

On February 14, 2014, the Defendant requested a continuance of that date because the birth of the Defendant's child was expected to occur close to the scheduled hearing date. The Court granted that motion and rescheduled the default hearing to March 11, 2014. On the afternoon of March 10, 2014, the day prior to the scheduled hearing, Defendant made a phone call to a member of the Court's staff to request another continuance. He was advised to make his request in the form of a motion. The Defendant did file a letter requesting a continuance with the Court on March 11, 2014, at 9:26 a.m. (docket #29) (the "Motion to Continue"). The default hearing was scheduled to commence at 11:00 a.m. that morning.

The Court took up the Defendant's Motion to Continue at the beginning of the default hearing. The motion recited that the birth of the Defendant's child had taken place on Friday, March 7, 2014, and that mother and daughter were released from the hospital on Sunday, March 9. At the time they were discharged, a check-up appointment was made for March 11 at

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

10:30 a.m. After hearing from the Plaintiffs and considering the contents of the Defendant's Motion to Continue, the Court denied the motion.

On March 18, 2014, the Defendant filed a letter with the Court seeking reconsideration of the Court's denial of the Motion to Continue (docket #34) (the "Motion to Reconsider"). The following day, the Defendant filed the first page of an After Visit Summary from Defendant's Daughter's medical appointment (docket #35). This was filed as an exhibit to the Motion to Reconsider. The Motion to Reconsider recites that Defendant's daughter had developed a fever on the day prior to the hearing. This is information not provided to the Court in the Motion to Continue. The summary filed as an exhibit to the Motion to Reconsider was not helpful to the Court because it contains no information referring to problems of any nature.

The Court deems the Motion to Reconsider to be a motion under FED. R. CIV. P. 59(e)[4] to alter or amend the Court's minute order (docket #30) reflecting the Court's denial of Defendant's Motion to Continue. "Grounds for granting a Rule 59(e) motion include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

Of the three grounds listed above, the only one that might apply under the circumstances of this case is "the need to correct clear error or prevent manifest injustice." *Id*. The Court does not read the Defendant's Motion to Reconsider to claim that either a change in the law or previously unavailable evidence is a factor. The Court finds no clear error or manifest injustice. The Court balanced the showing of cause for the Motion to Continue against prejudice to the Plaintiffs who appeared in court at the appointed hour, prepared for hearing and with no prior notice of the Motion to Continue. The default hearing had been scheduled since February 19, 2014, and was well known to the Defendant when his daughter's medical appointment was scheduled. Nothing in the Motion to Continue hinted at any emergency circumstance that was not reasonably within the Defendant's control to reschedule the medical appointment to a time that would not conflict with the scheduled hearing. The Court will deny the Motion to Reconsider.

### III.  CONCLUSION

In accordance with the above discussion, it is

---

[4] Made applicable to this proceeding by FED. R. BANKR. P. 9023.

ORDER TO DETERMINE
DISCHARGEABILITY OF DEBT
Adversary No. 13-1272 HRT

**ORDERED** that the Court will enter judgment on Plaintiffs' Complaint against the Defendant in the amount of $10,500.00 together with interest at the federal judgment rate, 28 U.S.C. § 1961, from and after the date of judgment.  Any funds collected by the Plaintiffs from the Defendant on said judgment shall be held in constructive trust by the Plaintiffs for the benefit of the unpaid subcontractor by the name of Ronald Mardoqueo Umanzor Sandoval.  It is further

**ORDERED** that the Court will enter judgment against the Defendant and in favor of the Plaintiffs for attorney fees and costs in the amount of $6,762.78 together with interest at the federal judgment rate, 28 U.S.C. § 1961, from and after the date of judgment.  It is further

**ORDERED** that the judgments entered herein are nondischargeable pursuant to 11 U.S.C. § 523(a).  It is further

**ORDERED** that Defendant's Motion to Reconsider (docket #34) is DENIED.

Dated this ___11th___ day of June, 2014.

**BY THE COURT:**

Howard R. Tallman, Chief Judge
United States Bankruptcy Court